## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antoine Land, Individually, and on Behalf of All Others Similarly Situated,, | |
| Plaintiff, | |
| v. | Case No. 1:10-CV-7640 |
| Frontline Communications, Inc., Gina Urso, Comcast Corporation and Comcast Cable Communications Management LLC, | |
| Defendants. | |

## DEFENDANTS COMCAST CORPORATION'S AND COMCAST CABLE COMMUNICATIONS MANAGEMENT LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Comcast Corporation and Comcast Cable Communications Management LLC (collectively, "Comcast") hereby submit the following Memorandum of Law in support of their Motion to Dismiss the Class Action Complaint of Plaintiff Antoine Land ("Land Complaint").

## INTRODUCTION

Plaintiff Antoine Land ("Land") seeks to resuscitate theories already considered and rejected by this Court. More than three years ago, in an action titled *Smilie v. Comcast Corporation, et. al.*, No. 07-CV-3231, Plaintiff Donald Smilie ("Smilie"), claimed that defendants Comcast and Frontline Communications, Inc. ("Frontline") had improperly classified technicians as independent contractors and failed to pay them overtime and other wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), the Illinois Minimum Wage Law 820 I.L.C.S. 105/1 *et. seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act 820 I.L.C.S. 115/1 *et. seq.* ("IWPCA"). (Ex. A, attached hereto, *Smilie* Complaint.) On February 25, 2009, Judge Shadur approved the settlement of the claims brought

by Smilie and six other opt-in plaintiffs. In so doing, Judge Shadur concluded as a matter of law that Comcast was *not* a joint employer of Frontline cable service technicians. (Ex. B) (Procedural Background and Conclusions of Law ("Conclusions of Law")). Judge Shadur considered and rejected the argument that Comcast had actual control over the named plaintiff in *Smilie* or any other Frontline technician. (*Id.*, p. 5.)

Now, eighteen months after *Smilie*, Land has brought a putative class action lawsuit against Comcast and Frontline recycling the same allegations and seeking to represent the same class as in *Smilie*. Land's claims stem from the same contention that Judge Shadur already has considered and rejected – that Comcast, with Frontline, jointly employed and improperly classified technicians as independent contractors under state and federal wage and hour laws.

This Court should dismiss Land's claims against Comcast in their entirety. Judge Shadur's conclusion just eighteen months ago that Comcast is not a joint employer of Frontline technicians disposes of all of Land's claims against Comcast. Further, Land's state law claims for unjust enrichment, quantum meruit, and breach of implied contract (Counts III, IV, and V) are preempted by the FLSA to the extent they seek damages for unpaid overtime wages. Finally, Land's claim under the Illinois Employee Classification Act ("IECA") (Count VI) also fails as a matter of law because the IECA does not apply to Comcast or to the type of work performed by Land. In sum, each of Land's claims against Comcast should be dismissed for failure to state a claim upon which relief can be granted.

## KEY FACTS

**I.      In the Earlier Parallel *Smilie* Action, Judge Shadur Concluded That Frontline And Comcast Did Not Jointly Employ Frontline Technicians.**

The *Smilie* action alleged that Comcast contracted out certain cable installation and maintenance services to Frontline. According to Smilie, Comcast and Frontline jointly employed

a class of technicians but improperly classified them as independent contractors. (*Smilie* Complaint, p. 2-3). As a result, Smilie claimed that both Frontline and Comcast were liable for the alleged non-payment of overtime wages under the FLSA, the IMWL, and the IWPCA. (*Id.*, p. 2, 5).

After discovery, the parties jointly moved Judge Shadur to approve a settlement of the claims of Smilie and six other opt-in plaintiffs. (Ex. C, Joint Motion for Approval of Settlement). On February 23, 2009, the parties submitted proposed findings of fact in support of the settlement. (*See* Ex. D) (Plaintiffs' and Defendant Comcast's Stipulated Findings of Fact ("Findings of Fact")). Each line of the twenty-two page Findings of Fact contained citations to the record based on specific discovery undertaken by both parties, including at least six depositions and multiple documents exchanged in the course of discovery. (*Id.*)

On February 25, 2009, after reviewing the parties' proposed findings of facts, Judge Shadur issued Conclusions of Law in which he found that Comcast and Frontline did not jointly employ Frontline cable service technicians. (*See* Ex. B, Conclusions of Law, p.6.) Specifically, Judge Shadur found that Comcast: (1) did not exercise control over Frontline contract technicians' working conditions; (2) had no authority to hire Frontline contract technicians; (3) did not supervise the day-to-day activities of contract technicians nor control their working conditions; (4) did not pay contract technicians; and (5) had no authority to fire or discipline Frontline contract technicians. (Ex. B, Conclusions of Law, pp.6-9.) On February 26, 2009, Judge Shadur approved the settlement between the parties. (*See* Ex. E, Minute Entry Approving Joint Motion For Approval of Settlement.)

## II.     The Present Complaint Recycles the Allegations Judge Shadur Already Ruled On In *Smilie.*

On October 20, 2010, Land filed the instant Complaint on behalf of himself as well as a

proposed class of "all technicians or other positions performing similar responsibilities [as technicians]." (Land Complaint ¶22.) He alleges violations of state and federal wage and hour law, including the IWPCA (Count I), the IMWL (Count II), the FLSA (Count VII) and various state common law claims, such as unjust enrichment (Count III), quantum meruit (Count IV), and breach of implied contract (Count V). He also asserts a claim under the IECA (Count VI). Land's claims against Comcast stem from his assertion that Comcast and Frontline jointly employed him and the putative class. (Land Complaint, ¶ 7) ("Defendants are jointly and severally liable for the unpaid wages and other relief sought in this lawsuit [and listing indicia in support of joint employer status].")

As the chart below demonstrates, Land's claims are premised on allegations that are virtually identical to those in *Smilie*:

| *Land* **Complaint: Present Allegations** | *Smilie* **Complaint: Previous Allegations -** |
|---|---|
| Comcast contracted Plaintiff's and class members' services through Frontline. (*Land* Complaint ¶7(a)) | "All [contractors] share employee services with Defendant Comcast so as to interchange employees from Comcast to each of them, and other third-party contractors unknown." (*Smilie* Complaint ¶7(a)) |
| Frontline exclusively received work orders from Comcast. (*Land* Complaint ¶7(b)) | All contractors and plaintiff/employees exclusively receive work orders...from Comcast. (*Smilie* Complaint ¶7(b)(i)) |
| Frontline, the Plaintiff and class members all performed similar duties and services as Comcast, in the same industry and core business. (*Land* Complaint ¶7(c)) | All defendants perform identical duties as do employees of Comcast and all other third party defendants and are engaged in the same industry and core business. (*Smilie* Complaint ¶7(b)(ii)) |
| All customers serviced by Frontline are, first, customers of Comcast (*Land* Complaint ¶7(d)) and Frontline's only contact with customers is through its contact and relationship with Comcast. (*Land* Complaint ¶7(e)) | All customers are first Comcast customers and the contractors' only point of contact with the public is through customers they are directed to by Comcast. (*Smilie* Complaint ¶7(b)(iii)) |
| Frontline vehicles have displayed signs, magnets, and/or decals identifying Comcast. (*Land* Complaint ¶7(f)) | Service vehicles owned by contractors display magnetic signs identifying the service vehicle as, in part, on behalf of Comcast. (*Smilie* Complaint ¶7(b)(iv)) |
| Plaintiffs and class members wore uniforms | Plaintiffs don daily shirts that display the |

| | |
|---|---|
| featuring the Comcast name. (*Land* Complaint ¶7(g)) | Comcast name and logo. (*Smilie* Complaint ¶7(b)(v)) |
| Comcast provided Plaintiff and class members with Comcast identification badges. (*Land* Complaint ¶7(h)) | Plaintiffs possess and display picture identification which identifies them as being associated with, among other companies, Comcast. (*Smilie* Complaint ¶7(b)(vi)) |
| Comcast provided Frontline with necessary supplies and equipment to provide cable services to Comcast customers. (*Land* Complaint ¶7(i)) | Comcast provides all contractors with equipment and supplies necessary to carry out the daily services to the cable customers. (*Smilie* Complaint ¶7(b)(ix)) |

Additionally, Land seeks to represent the same class of employees who would have been covered by the *Smilie* action. *Compare Land* Complaint ¶ 12, 22 (seeking to represent "all individuals who are currently employed and classified as an independent contractor or were so employed and classified by one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois as technicians or other positions performing similar responsibilities for the Defendants at any time during the relevant statute of limitations period) *with Smilie* Complaint ¶9 (purporting to cover "all persons who have been or will be employed by any or all Defendants, known or unknown, designated as and working as a cable service technician independent contractor on or after the date three (3) years prior to the filing of this action").[1]

---

[1] Land alleges that, "[B]eginning in or around 2009, technicians were reclassified by Defendants as non-exempt employees under Illinois state wage and hour laws and purportedly paid an hourly rate." (*Land* Complaint ¶12) Accordingly, the class of technicians that Land purports to represent ends in 2009.

**ARGUMENT**

I.    **The Claims In the Present Suit Against Comcast Are Barred By Judge Shadur's Prior Ruling That It Is Not A Joint Employer.**

Rule 12(b)(6) permits the dismissal of a claim for a "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6); *Opp v. Office of the State's Attorney of Cook County*, No. 09-3714, 2010 WL 5366891, *4 (7th Cir. Dec. 29, 2010) (affirming motion to dismiss where, as a matter of law, plaintiffs' claims failed to state a claim for relief). In ruling on a motion to dismiss, "[t]he district court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 747-75 (7th Cir. 2001); *See also Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (internal quotations omitted); *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).[2]

The doctrine of stare decisis may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Catoor v. Blair*, 358 F.Supp. 815, 817 (N.D. Ill. 1973) (granting motion to dismiss where defendant argued that, under principle of stare decisis, the case was barred by the court's prior ruling.) The principle of stare decisis instruct courts "to decide a case in accordance with what has been decided previously in other, similar cases (similar in the sense of not being legally distinguishable)." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119 (7th Cir. 1987). *See also Santos v. U.S.*, 461 F.3d 886 (7th Cir. 2006) (Principles of stare decisis "require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other

---

[2] The only matters outside of the Complaint upon which Comcast relies are pleadings and documents filed in district court, publicly available transcripts of court proceedings, and court decisions. These are matters that the Court may judicially notice. Fed. R. Evid. 201(b); *see also Consolidation Coal Co. v. United Mine Workers of Am., Dist. 12, Local Union 1545*, 213 F.3d 404, 407 (7th Cir. 2000); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[A] court may take judicial notice [of] its own court documents and records [and] may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.") (internal citations omitted).

supervening developments, such as statutory overruling.") (internal citations omitted). The "mere existence of [the prior decision] 'becomes a reason for adhering to [its] holding [] in subsequent cases,' especially when those cases are directly on point[.]" *U.S. v. Sykes*, 598 F.3d 334, 338 (7th Cir. 2010) (citing *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005)).

Generally, district court decisions are not treated by other district judge as controlling precedent. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002). However, "[a]ny [prior court] decision may have persuasive force, and invite – indeed compel – the careful and respectful attention of a court confronted with a similar case…[and] a court *must give considerable weight to [its own previous decisions] unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as statutory overruling.*" *Colby*, at 1122-3 (7th Cir. 1987) (emphasis added); *see also Bethesda Lutheran Homes and Services, Inc. v. Born*, 238 F.3d 853 (7th Cir. 2001) ("For the sake of law's stability, a court will not reexamine a recent decision…unless given a compelling reason to do so."); *Abbott Labs. v. Torpharm, Inc.*, 156 F.Supp.2d 738, 741(N.D. Ill. March 30, 2001) (reviewing and adopting prior decision by the Hon. James Zagel of Northern District of Illinois in granting motion for summary judgment, though declining to answer whether stare decisis applies because court agreed with Judge Zagel's claim construction regardless), *aff'd in part, vacated in part* 300 F.3d 1367 (Fed. Cir. 2002).

With these principles in mind, the Court should reject Land's invitation to revisit Judge Shadur's prior ruling in the *Smilie* matter. The issues that Land raises are identical to those issues raised in the *Smilie* case – whether Comcast and Frontline jointly employed technicians and, consequently, whether they are jointly liable under federal and state wage and hour laws.

Indeed, Land points to the same alleged indicia of joint employer status that the *Smilie* case raised. As set forth in more detail below, Judge Shadur specifically addressed each of these indicia in his conclusions of law.

| *Land* Complaint: Present Allegations | *Smilie* Complaint: Previous Allegations - | *Smilie* Complaint: Judge Shadur's Conclusions of Law |
|---|---|---|
| Comcast contracted Plaintiff's and class members' services through Frontline. (*Land* Complaint ¶7(a)) | "All [contractors] share employee services with Defendant Comcast so as to interchange employees from Comcast to each of them, and other third-party contractors unknown." (*Smilie* Complaint ¶7(a)) | Comcast had no authority to and did not hire Smilie or any other Frontline contract technician. (Conclusions Of Law ¶11) Frontline decided, with no input from Comcast, to use contract technicians to perform services under its contract with Comcast. *Id.* Frontline recruited those technicians, developed its own Independent Contractor Agreement with each of the technicians. *Id.* |
| Frontline exclusively received work orders from Comcast. (*Land* Complaint ¶7(b)) | All contractors and plaintiff/employees exclusively receive work orders…from Comcast. (*Smilie* Complaint ¶7(b)(i)) | Comcast asserted no control with respect to the type and variety of work contract technicians did for Frontline and Comcast did not restrict contract technicians' ability to perform any type of services they chose, for anyone they chose. (Conclusions Of Law ¶18) |
| Frontline, the Plaintiff and class members all performed similar duties and services as Comcast, in the same industry and core business. (*Land* Complaint ¶7(c)) | All defendants perform identical duties as do employees of Comcast and all other third party defendants and are engaged in the same industry and core business. (*Smilie* Complaint ¶7(b)(ii)) | Comcast asserted no control with respect to the type and variety of work contract technicians did for Frontline and Comcast did not restrict contract technicians' ability to perform any type of services they chose, for anyone they chose. (Conclusions Of Law ¶18) |
| All customers serviced by Frontline are, first, customers of Comcast (*Land* Complaint ¶7(d)) and Frontline's only contact with customers is through its contact and relationship with Comcast. (*Land* Complaint ¶7(e)) | All customers are first Comcast customers and the contractors' only point of contact with the public is through customers they are directed to by Comcast. (*Smilie* Complaint ¶7(b)(iii)) | Comcast asserted no control with respect to the type and variety of work contract technicians did for Frontline and Comcast did not restrict contract technicians' ability to perform any type of services they chose, for anyone they chose. (Conclusions Of Law ¶18) |
| Frontline vehicles have | Service vehicles owned by | Comcast did not provide contract |

| | | |
|---|---|---|
| displayed signs, magnets, and/or decals identifying Comcast. (*Land* Complaint ¶7(f)) | contractors display magnetic signs identifying the service vehicle as, in part, on behalf of Comcast. (*Smilie* Complaint ¶7(b)(iv)) | technicians with any vehicles, tools, uniforms or insurance. (Conclusions Of Law ¶13) Comcast did not supervise Plaintiffs' day-to-day activities or control their working conditions. Accordingly, Comcast was not a joint employer of Plaintiffs (*see Santelices*, 147 F.Supp.2d at 1327, finding no joint employment where there was no evidence that cable company checked work on a daily basis, gave work commands or otherwise intervened in the performance of duties on a daily basis or anytime. ) (Conclusions of Law ¶19) |
| Plaintiffs and class members wore uniforms featuring the Comcast name. (*Land* Complaint ¶7(g)) | Plaintiffs don daily shirts that display the Comcast name and logo. (*Smilie* Complaint ¶7(b)(v)) | Comcast did not provide contract technicians with any vehicles, tools, uniforms or insurance. (Conclusions Of Law ¶13) Comcast's contract with Frontline "merely required that technicians wear long pants, not shorts, and wear shirts identifying themselves as authorized 'contractors' for Comcast, while performing services for Comcast customers." *Id.* "Such 'contractual concepts alone do not satisfy the 'economic realities' test' (*Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1327 (S.D. Fla. 2001)), declining to find joint employment where contract required that cable installers be neatly dressed and polite." *Id.* |
| Comcast provided Plaintiff and class members with Comcast identification badges. (*Land* Complaint ¶7(h)) | Plaintiffs possess and display picture identification which identifies them as being associated with, among other companies, Comcast. (*Smilie* Complaint ¶7(b)(vi)) | Comcast did not provide contract technicians with any vehicles, tools, uniforms or insurance. (Conclusions Of Law ¶13) Comcast did not supervise Plaintiffs' day-to-day activities or control their working conditions. Accordingly, Comcast was not a joint employer of Plaintiffs (*see Santelices*, 147 F.Supp.2d at 1327, finding no joint employment where there was no evidence that cable company checked work on a |

| | | |
|---|---|---|
| | | daily basis, gave work commands or otherwise intervened in the performance of duties on a daily basis or anytime. ) (Conclusions of Law ¶19) |
| Comcast provided Frontline with necessary supplies and equipment to provide cable services to Comcast customers. (*Land* Complaint ¶7(i)) | Comcast provides all contractors with equipment and supplies necessary to carry out the daily services to the cable customers. (*Smilie* Complaint ¶7(b)(ix)) | Comcast did not provide contract technicians with any vehicles, tools, uniforms or insurance. (Conclusions Of Law ¶13) Comcast did not supervise Plaintiffs' day-to-day activities or control their working conditions. Accordingly, Comcast was not a joint employer of Plaintiffs (*see Santelices*, 147 F.Supp.2d at 1327, finding no joint employment where there was no evidence that cable company checked work on a daily basis, gave work commands or otherwise intervened in the performance of duties on a daily basis or anytime. ) (Conclusions of Law ¶19) |

In short, Judge Shadur addressed each of the allegations that Land now raises in the *Smilie* case and found that "considering the totality of the circumstances, Comcast was not a joint employer of Plaintiffs under the FLSA (*see Moldenhauer*, 536 F.3d 645, holding no joint employment where alleged employer did not hire, determine working conditions, decide compensation, or give permission to fire.)" (Conclusions of Law ¶22) Because the present claims are brought by the same class, for the same time period, based on the same allegations, Judge Shadur's conclusion that, as a matter of law, Comcast did not jointly employ Frontline technicians requires dismissal of Land's claims against Comcast. *See Tate v. Showboat Marina Casino P'ship., et. al.*, 431 F.3d 580 (7th Cir. 2005) (doctrine of stare decisis precluded reconsideration where present case involved the same boat, same job titles and same overlapping time period and only material difference between the two cases was the identity of the plaintiffs.); *Catoor v. Blair*, 358 F.Supp. 815, 815-817 (N.D. Ill. 1973) (granting defendant's

motion to dismiss where defendant argued that the present case was barred by the principle of stare decisis; issues in the present case were "virtually identical" to those of the court's prior ruling in another case.); *Abbott Labs. v. Torpharm, Inc.*, 156 F.Supp.2d 738, 741(N.D. Ill. March 30, 2001), *aff'd in part, vacated in part* 300 F. 3d 1367 (Fed. Cir. 2002).[3]

Judicial economy and fairness also warrant dismissal of Plaintiff's wage claims against Comcast. "When federal litigation is followed by many duplicative...suits, it is sensible to handle the preclusive issue once and for all in the original case, rather than put the parties and...judges through an unproductive exercise." *Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 333 F.3d 763, 766 (2003). Comcast has already addressed – and Judge Shadur already has disposed of – the question of whether it jointly employed technicians with Frontline. Allowing Land to proceed with this virtually identical suit, therefore, would lead to just such an "unproductive exercise." Further, Frontline technicians (as well as technicians working for any other third-party contractor that supplies services to Comcast) would have multiple "bites at the apple," as they could simply re-file their cases with different sets of technicians until they find a judge who would find that Frontline and Comcast were joint employers. Multiple judges would then be deciding whether Comcast and Frontline were joint employers for the purposes of state and federal wage and hour laws – *despite* findings to the contrary by a judge on exactly the same points. This Court should not waste its judicial resources reconsidering an issue that it has already decided.

---

[3] That Judge Shadur's conclusions of law were issued at a stage of litigation where the parties had requested settlement is of no import – such judicial findings of fact and conclusions of law are entitled to deference. *See Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1083 (7th Cir. 1979) (Although court entered consent judgment pursuant to agreement of parties, court issued judicial findings of fact and conclusions of law going to the merits of the controversy which constituted an adjudication on the merits.)

II.    **The FLSA Preempts Land's State Common Law Claims To the Extent They Seek To Recover Unpaid Overtime.**

It is well-established that the FLSA preempts common law wage and hour claims where common law claims are grounded upon the same facts and allegations as the FLSA claims. *See Farmer v. DirectSat USA, LLC*, No. 08-C-3962, 2010 WL 3927640, *16 (N.D. Ill. Oct. 4, 2010) (FLSA preempted state common law claims of unjust enrichment, quantum meruit and breach of implied contract.); *Sorensen v. CHT Corp.*, Nos. 03-C-1609, 03-C-7362, 2004 WL 442638, *7 (N.D. Ill. March 9, 2004) (state common law claims preempted by FLSA); *Morgan v. Speakeasy, LLC*, 625 F.Supp. 2d 632, 659-660 (N.D. Ill. 2007) (claim for unjust enrichment "directly covered" by the FLSA and thus preempted). In *Farmer*, a class of plaintiff-technicians alleged that they routinely worked in excess of eight hours per day six days per week and that defendants failed to pay them overtime wages as required by federal and state wage laws. *Farmer*, at *1, *7. Based on these same facts, the plaintiffs also brought claims for unjust enrichment, quantum meruit, and breach of implied contract. *Id.*, *1. Defendants argued that the plaintiffs' claims for unjust enrichment, quantum meruit, and breach of implied contract were "squarely based on rights established by the FLSA," and, therefore, the claims were preempted by the federal law. *Farmer*, at *14. The *Farmer* court agreed, pointing to a "significant body of persuasive authority" that the "FLSA preempts plaintiffs' state common law claims of unjust enrichment, quantum meruit, and breach of implied contract." *Id.*, *16.

Similarly, in *Sorensen v. CHT Corp.*, No. 03 C 1609, 2004 WL 442638 (N.D. Ill. Mar. 10, 2004), plaintiffs brought claims under the FLSA, the IMWL, the IWPCA, and unjust enrichment alleging that defendant failed to pay them minimum wages and overtime pay. *Sorensen*, *1-2. The court found that the plaintiffs could not pursue a state common law claim where the claim was based on the same facts as their FLSA claim. *Sorensen*, *7.

Here, Land's claims for unjust enrichment (Count III), quantum meruit (Count IV), and breach of implied contract (Count V) are grounded on the same facts as the FLSA claim. They rest on Land's allegations that he (and the purported members of the class) performed work for Defendants and failing to be compensated appropriately for such work. (*Land* Complaint ¶¶ 51, 52, 55, 59) Land alleges that Defendants (1) improperly deducted monies from wages of Plaintiff and class members and (2) failed to pay Plaintiff and class members for all overtime hours actually worked. (*Land* Complaint ¶¶ 14, 19) Likewise, Land's FLSA claim seeks relief for Defendants' alleged failure to pay proper overtime compensation. (*Land* Complaint ¶ 70) Thus, to the extent that Land's state law claims seek relief for alleged unpaid overtime compensation, the claims are preempted and should be dismissed.[4]

### III. Land's IECA Claim Against Comcast Fails Because the Statute Clearly And Unambiguously Applies Only To Construction Work.

The IECA addresses the practice of misclassifying employees as independent contractors in the *construction* industry. 820 ILCA 185/1, 5. As Land himself notes in his Complaint, Comcast is a "provider[] of cable, entertainment and communications products and services in the state of Illinois" – not an entity engaged in the construction industry. (Land Complaint ¶ 5). Land alleges that he and other technicians fall under the purview of the IECA because they installed cable through walls. (Land Complaint ¶ 65). But nowhere in the long list of activities defining "construction" in the statute does the temporary installation of cable wires appear. 820 ILCA 185/5. As a matter of law, therefore, the IECA by its terms does not apply to Land's claims here. *See Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 548 (7th Cir. 2005)

---

[4] Because Land's state common law claims fail to the extent that they are duplicative of his FLSA claims, Land may not purport to represent a class on those causes of action. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (To have standing to sue as a class representative, it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.); *Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 563 (N.D. Ill. 1972) (Before one can represent others in a class action, the named plaintiff must state a valid claim of his own.)

(affirming motion to dismiss because claim did not fall within scope of statute based on definitions contained within statute); *Haltek v. Village of Park Forest*, 864 F.Supp. 802, 805-6 (N.D. Ill. 1994) (granting motion to dismiss with respect to claims where definition in statute did not cover parties against whom plaintiff brought claims).

## CONCLUSION

Based on the foregoing reasons, Comcast respectfully requests that this Court dismiss Land's state and federal wage and hour claims and IECA claim in their entirety and grant such other relief as the Court deems appropriate.

COMCAST CORPORATION AND
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC


By: /s/ Sari M. Alamuddin
      By Their Attorneys

Sari M. Alamuddin
Ritu Srivastava
Stephanie M. Christiansen-LaRocco
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601-5094
312.324.1000

Dated: January 7, 2011