IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANTOINE LAND, Individually, and on Behalf of All Others Similarly Situated, )<br>)<br>) | |
| Plaintiff, )<br>)<br>) | |
| v. ) | Case No. 10-cv-07640 |
| FRONTLINE COMMUNICATIONS, INC., GINA URSO, COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC )<br>)<br>)<br>)<br>)<br>)<br>) | Honorable Judge Joan H. Lefkow |
| Defendants. ) | |

## PLAINTIFFS' OPPOSITION TO COMCAST'S MOTION TO DISMISS

### I. INTRODUCTION

In its Rule 12(b)(6) motion, Comcast, seeks dismissal of Plaintiffs' complaint by citing to matters outside the pleadings. Namely, and before the Plaintiffs have had an opportunity to conduct any discovery, Comcast asks this Court to bar their claims based solely on Judge Shadur's approval of a settlement and stipulated findings of facts in a completely different case *two years ago*. See D.E. 22 at 1-2 (citing *Smilie v. Comcast, et. al,* hereafter "the *Smilie* case"). The *Smilie* case, which was settled on an individual and not a class wide basis – indisputably featured different parties, covered a different time period, involved different facts, and was litigated under different legal theories and defenses over the issue of whether Comcast is liable as an employer under the *Illinois Employee Classification Act*, 820 ILCS 185/1, *et al* ("IECA"). Comcast's motion must be denied because it is entirely dependant on matters outside the pleadings and must, therefore be treated as a Rule 56 motion for summary judgment. In accordance with Rule

12(d), the Plaintiffs here must be provided with a reasonable opportunity to engage in discovery and present all the pertinent facts, information and documents which should be fairly considered in opposition to the motion.

Comcast's motion to dismiss Plaintiffs' IECA claims is also premature and must be denied. Before any discovery and without any evidentiary support or citation to legal authority, Comcast asks this Court to adopt its narrow definition of construction by limiting such claims to the "construction industry." The IECA, however, defines "construction" in broad strokes to include the work performed by Plaintiffs and specifically plead in their complaint (*i.e.*, installing cable and communication systems in residential and commercial properties). *See* 820 ILCS 185/5. Because the IECA's definition of construction is inclusive, because Plaintiffs have properly alleged claims that fall within this definition and because Comcast has not offered any evidentiary support to the contrary, Comcast's motion to dismiss Plaintiffs' IECA claims must be denied.[1]

## II. ARGUMENT

### A. Comcast's Motion Depends on Matters Outside the Pleadings and Must be Treated as a Motion for Summary Judgment.

Comcast exclusively relies on the stipulated findings of fact (Ex. D to Comcast's motion to dismiss) and resulting Procedural Background and Conclusions of Law (Ex. B to Comcast's motion to dismiss) from the *Smilie* case to support its motion to dismiss Plaintiffs' claims. While Comcast admits these matters are outside the pleadings, it goes to great lengths to paint them as judicial rulings that somehow support the invocation of

---

[1] Solely for purposes of this response, Plaintiffs concede that their common claw claims for unjust enrichment, quantum meruit and breach of implied contract are preempted by the FLSA.

2

the principle of *stare decisis*. Comcast, however, fails to mention the following key facts in *Smile*:

- The parties in the *Smilie* Parties' Joint Motion to Approve Settlement stated, "Here, ***there are bona fide disputes as to whether plaintiffs are covered by the FLSA's provisions, or are independent contractors, and as to whether, even if Plaintiffs were covered by the FLSA***, Defendant Comcast was their employer." (Ex. C to Comcast's motion to dismiss) (emphasis added).

- In exchange for releasing their claims, Comcast paid Plaintiffs Donald Smilie $17,500, Juan Samayoa $8,000, John Munoz $8,000, Pablo Sanchez $8,000, Slawomir Kiraga $2,500, Brain DeSanctis $2,500 and Rolando Pacheco $2,500. (Ex. A- *Smilie* Memorandum of Law in Support of Settlement at Pgs 4-5). Comcast also paid Plaintiffs' attorneys $325,000 in fees. (*Id.*)

- On the same day that the parties submitted their joint motion for approval, the parties submitted their Stipulated Findings of Facts. **Comcast made the stipulated Findings of Fact an express condition of the Parties' settlement agreement**. (Ex. A at Pg. 5).

- Two days later, Judge Shadur approved the Parties' Joint Motion for Settlement and signed the Procedural Background and Conclusions of Law. Judge Shadur accepted and relied solely on the Parties' unsupported Stipulated Findings of Fact for purposes of reaching his Conclusions of Law. (Ex. B; Pg. 2 to Comcast's motion to dismiss).

In other words, Comcast wants this Court to rule that it is forever immunized from claims that it is an "employer." And it wants the Court to base its decision on 24 pages of **stipulated** facts – not a contested legal decision. Comcast should not be permitted to rely on these facts outside the pleadings without first permitting Plaintiffs, at the very least, the opportunity to obtain discoverable information which could demonstrate the existence of genuine issues of material fact **in this case**.

3

### B. Judge Shadur's Approval of the *Smilie* Settlement and Stipulated Findings of Fact Does Not Apply to the Plaintiffs Here.

In its motion, Comcast essentially asks this Court to apply Judge Shadur's approval of a settlement for six individual Plaintiffs as an absolute bar against all claims made by any other past, present or future employees regardless of any differences in parties, time periods, claims or facts that may be established through discovery. Comcast has not cited a single case where a Court's approval of a settlement of individual claims barred claims made by other plaintiffs outside of the settlement. Such a concept has no basis in law or common sense and should not be permitted here.[2]

Moreover, Comcast omits critical details that distinguish the *Smilie* Plaintiffs from the Plaintiffs in this case. First and as stated above, Comcast paid the six individual Plaintiffs in *Smilie* between $2,500 and $18,000 each to settle their claims. The Plaintiffs here have not been offered or paid a cent in satisfaction of their claims.

Second, a class of plaintiffs was never certified in *Smilie*. Plaintiffs here are committed to certifying a distinct class of plaintiffs seeking damages under the IMWL, IWPCA, and IECA.

Third, to the extent Plaintiffs are asserting claims under the IWPCA and IMWL like the *Smilie* Plaintiffs, the claims here are asserted for a different time period, including ongoing claims after the *Smilie* settlement to the present date. A quick glance at Plaintiffs' complaint reveals allegations related to events occurring after the February 25, 2009 *Smilie* settlement. Importantly, Plaintiffs allege that beginning in 2009 they were reclassified by Defendants from independent contractors to non-exempt employees.

---

[2] If Comcast's arguments were accepted by this Court, any employer could easily avoid all future liability, including class wide liability, simply by settling a claim with an individual Plaintiff, requiring stipulated

4

(Ex. B, ¶12 of Plaintiffs' Complaint). Despite Defendants' reclassification, Plaintiffs' job duties and requirements remained the same. Moreover, Plaintiffs have alleged that Defendants' violations of the FLSA, IMWL and IWPCA related to improper deductions, unpaid wages and overtime continued after the reclassification.[3]

Fourth, Plaintiffs have asserted claims under the IECA that were never brought or settled in *Smilie*. As detailed in section "C" below, Plaintiffs have properly plead claims under the IECA by, amongst other things, naming Comcast as an employer under section 820 ILCS 185/10 of the IECA.

Fifth, Plaintiffs believe discovery will reveal additional facts that were not uncovered or fully established in the *Smilie* case. For example, Plaintiff counsels' investigation has revealed additional facts they anticipate will be developed through discovery including the following:

- Plaintiff technicians communicated with Comcast dispatch on a regular basis regarding installations, work orders, trouble shooting and other matters. (Ex. C Declaration of Parfait Moukiama ¶13)

- Plaintiff technicians were routed to their jobs by Comcast via a computer program called TechNet. (Ex. C ¶7)

- TechNet is a sophisticated routing system contracted for and used by Comcast and provided to technicians on their cell phones so they can log on and receive their jobs each morning, input ETA's for their jobs, get directions, activate cable boxes, log notes, receive notes from Comcast, order equipment, track equipment, change orders and close out jobs amongst many other functions. Upon information and belief, Comcast dispatch accessed TechNet to monitor and track technicians' performance in real time, re-route jobs and collect valuable information from technicians, amongst other things. (Ex. C ¶7; 14; 23; 27)

---

findings of fact as part of the settlement, and then using those findings as a shield against claims made by any other employees, including claims that arose after the date of settlement.
[3] Plaintiff, Parfait Moukiama testified that after the reclassification, Defendants failed to accurately record his time worked, failed to pay him overtime and continued to make improper deductions from his pay. (Ex C)

5

- Plaintiffs were required to comply with specific instructions from Comcast directing them on how to perform installations and service calls. (*See* Ex. D - *Comcast Specific Description of the Work*)[4]

- Comcast regularly performed Quality Control "QC" checks on technicians' work. (Ex. C ¶8)

- Comcast required Plaintiffs to sell its cable guard insurance and disciplined those that failed to do so. (Ex. C ¶9)

- Comcast regularly led work meetings with Plaintiffs, including a meeting that announced technicians were being reclassified from independent contractors to employees (Ex. C ¶15; 18; 19).

Although these facts are highly relevant to the determination of whether or not Comcast is an employer, they were not presented or considered by Judge Shadur when he entered the Procedural Background and Conclusions of Law in *Smilie*. For example, Technet is Comcast's eyes in the sky that permit Comcast to supervise and exert control over virtually everything technicians do in the field. Plaintiffs believe that these and other anticipated facts will contradict the stipulated findings from *Smilie*.[5] Plaintiffs here, in the interests of due process, must be provided the opportunity to develop these and other facts in further support of their own claims.

Despite Comcast's arguments that Plaintiffs' claims are recycled, this lawsuit is a different one than the one brought by the *Smilie* plaintiffs. There is no basis in law or logic to permit Comcast to use a settlement and stipulated facts from *Smilie* – in which six other Plaintiffs and their counsel reaped a combined $400,000 in funds, as a shield

---

[4] Although this exhibit was produced in other pending litigation, Plaintiffs will seek this document and other similar documents through discovery in this case.

[5] For example, Comcast states that "it does not dictate what types of work technicians do." (Ex. D; ¶25 to Comcast's motion) However, Comcast's Statement of Work provides detailed directives that technicians are required to follow when completing Comcast installations. Ex. D - *Comcast Specific Description of the Work*

6

against different claims, brought by different employees, covering different time periods, seeking relief under different theories and different laws as the Plaintiffs do here.

### C. Cases Cited by Comcast are Distinguishable From This Case

Comcast argues that the Court should dismiss Plaintiffs' claims because they are identical to those asserted in *Smilie*. Not only does Comcast's argument ignore the multitude of differences set forth above, but it also misapplies the principle of *stare decisis*. The Seventh Circuit has consistently held that a district court decision does not have *stare decisis* effect; it is not precedent. *Bank of America, N.A. v. Moglia*, 330 F. 3d 942, 949 (7th Cir. 2003); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002); *Zurich Insurance Co., v. Amcor Sunclipse North America*, 241 F.3d 605, 608 (7th Cir. 2001).

Comcast has not cited a single case where a Court applied *stare decisis* based on an underlying district court decision and dismissed a subsequent case pursuant to Rule 12(b)(6) before Plaintiffs in that case had an opportunity to conduct discovery and present material relevant to the motion.[6] The closest Comcast gets is by citing to *Catoor v. Blair*, 358 F. Supp. 815, (N.D. Ill. 1973) *Catoor* is distinguishable because the underlying decision in *Balthazar* was made by a three judge panel regarding the same exact legal issue – the constitutionality of an Illinois tax statue. Unlike here, the Court in *Catoor* ruled that the issues raised by Plaintiffs were virtually identical to those raised in *Balthazar*. 358 F. Supp. 815, (N.D. Ill. 1973)

Nor has Comcast cited to a single case where *stare decisis* was based on stipulated findings at the District Court level and as required as part of a settlement for

certain plaintiffs and applied to bar claims made in a new case brought by separate plaintiffs asserting additional claims.[7] In sum, Comcast cannot cite to a single case that supports the application of *stare decisis* here.

### D. Comcast's Narrow Definition of "Construction" under the IECA is Unsupported and Premature.

Before any discovery and without any evidentiary support or legal authority, Comcast asks this Court to adopt its narrow definition of construction by limiting such claims to the "construction industry." The IECA, however, defines "construction" as:

> constructing, altering, reconstructing, repairing, rehabilitating, refinishing, refurbishing, remodeling, remediating, renovating, custom fabricating, maintenance, landscaping, improving, wrecking, painting, decorating, demolishing and adding to or subtracting from any building, structure, highway, roadway, street, bridge, alley, sewer, ditch, sewage disposal plant, water works, parking facility, railroad, excavation or other structure, project, development, real property or improvement, or to do any part thereof, whether or not the performance of the work herein described involves the addition to, or fabrication into, any structure, project, development, real property or improvement herein described of any material or article of merchandise.

820 ILCS 185/5.(Ex. E) In their complaint, Plaintiffs allege that they "performed improvements on real property by, amongst other things, installing permanent cable through and within walls into a system that is used for Comcast cable services." (*See* Plaintiffs' Complaint at ¶65) Moreover, Plaintiffs believe that discovery in this case will reveal that they added outlets, reconfigured phone jacks, installed filters, connectors, bushings and weatherproofing, ensured that ingress measurements met Comcast specifications, routed cable from the tap to the primary device in accordance with

---

[6] Rather the applicable cases cited by Comcast were determined at the summary judgment stage and after discovery had been conducted. *See Abbott Labs v. Torpharm,Inc.*, 156 F. Supp. 2d 738; *Martino v. McDonald's Systems, Inc.*, 598 F. 2d 1079 (7th Cir. 1979);

[7] For example, in *Tate v. Showboat Marina*, the Court applied stare decisis based on the 7th Circuit's opinion affirming a jury verdict in the underlying *Harkins v. Riverboat Services Inc.* case, 385 F. 3d 1099 (7th Cir. 2004)

Comcast specifications, repaired connections and other defects and removed outdated connections and equipment from the real property of Comcast's customers. (Ex. D) Because the IECA's definition of construction is inclusive, because Plaintiffs have properly alleged claims that fall within this definition and because Comcast has not offered any evidentiary support to the contrary, Comcast's motion to dismiss Plaintiffs' IECA claims is, at best, premature and must be denied.

### III. CONCLUSION

Simply put, the *Smilie* settlement and related stipulations are outside the pleadings of this case and not binding on the Plaintiffs here. At this early stage of the case, Pursuant to Rule 12(d) Plaintiffs must be provided the opportunity to conduct discovery and present all the material that is relevant to Comcast's motion. For all the above reasons, Comcast's motion must be denied.

Respectfully submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
Attorney No. 43734

**ATTORNEYS FOR THE PLAINTIFFS**